Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVERETT SCOTT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | Jury Trial Demanded |
| APPLE, INC. and APPLECARE SERVICES COMPANY, INC., | |
| Defendants. | |

**INTRODUCTION**

1.  Countless consumers opt to purchase AppleCare+ when they buy a new Apple device. AppleCare+ provides coverage and protection for the device beyond the standard warranty included with the device. AppleCare+ is a sensible investment for most consumers, as it provides peace-of-mind and protection for what could be very expensive repairs.

2.  However, AppleCare+ runs with the specific device for which it is purchased, and when the consumer trades in or returns that device, Apple is required to stop charging AppleCare+ subscription fees for that device. Obviously, once the device is returned to Apple, consumers have no

1

CLASS ACTION COMPLAINT

need for protection or support on that device and should no longer be required to pay for that protection and support.

3. Unfortunately, rather than honoring its own AppleCare+ agreements, Apple continued charging Plaintiff and members of the Class for AppleCare+ subscriptions tied to devices Apple knew had been returned to Apple. In Plaintiff's case, Apple kept collecting monthly fees well after the trade-in, while also charging new monthly AppleCare+ subscription fees for his new devices.

4. Apple ties AppleCare+ to a particular device by serial number, and charges fees by device, and services are available under the contract only in connection with that device. When consumers like Plaintiff sign up for a monthly AppleCare+ subscription at purchase, Apple automatically enrolls their specific device in AppleCare+ and immediately begins charging fees.

5. Apple also tracks trade-ins and returns by serial number. Thus, Apple knows when a device covered by an AppleCare+ contract has been traded in or returned. Because Apple tracks trade-ins and returns, Apple is clearly able to automatically turn off AppleCare+ fees when a consumer trades in or returns a device, just as easily as Apple automatically started the fees on purchase.

6. Apple's conduct of continuing to charge consumers for AppleCare+ tied to devices that Apple knows are no longer owned by those consumers is unfair and unlawful. Apple's own trade-in terms require consumers to relinquish ownership of the covered devices forever. AppleCare+ is an extended warranty and service contract that is worthless to the consumer without the covered device. In addition, Apple will never have to provide the protections under AppleCare+ to the consumer because the consumer no longer has the device. In essence, Apple is collecting fees for services that it knows it will never have to provide.

7. As alleged herein, Apple breached its contracts with consumers, violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, et seq., and unjustly enriched itself at its customers' expense. On behalf of himself and the Class, Plaintiff seeks injunctive relief requiring Apple

to stop charging consumers for AppleCare+ on devices that have been traded in or returned, as well as damages, punitive damages, and attorneys' fees.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because at least one class member is of diverse citizenship from Defendant, there are more than 100 class members, and upon information and belief, the aggregate amount in controversy exceeds $5,000,000.

9. This Court has personal jurisdiction over Defendant Apple, Inc. because it is a California corporation, its principal place of business is in California, and it has conducted and continues to conduct business in California.

10. This Court has personal jurisdiction over Defendant AppleCare Service Company, including its "dba" entity Apple CSC, because its principal place of business is in California, and it has conducted and continues to conduct business in the State of California.

11. Venue is proper in this District under 28 U.S.C. § 1391 because the events that gave rise to the claims occurred in substantial part in this District.

12. Venue is proper in this Court with respect to California's Consumer Legal Remedies Act ("CLRA") because Defendants' principal place of business is within a county within this District. The affidavit required by Cal. Civ. Code § 1780(d) is attached as an exhibit to this Complaint.

**PARTIES**

13. Plaintiff Everett Scott is a resident of California. He purchased an iPhone 13 (serial number C0734YJ097) on or about mid-2021. When he purchased the device, he also ordered AppleCare+. Apple informed him that his AppleCare+ subscription was automatically registered with

his new Apple device at a cost of $9.99/month.  Plaintiff regularly received a monthly "Receipt and Renewal Notice" from Apple for AppleCare+ charging $9.99 that was specifically tied to his new device.

14. In or around May 2023, Plaintiff traded in his device through Apple's official trade-in program. Later that month, the trade in process was complete, and Apple acknowledged that Plaintiff had traded in the device. As part of the trade in process, Apple sold Plaintiff a new device with a new serial number, and Apple sold and automatically enrolled him in an AppleCare+ subscription connected to the new device.

15. At the same time, Apple continued to charge Plaintiff for the AppleCare+ subscription tied to the iPhone 13 (serial number C0734YJ097) that he no longer owned from on or around May 2023 through September 2024 in addition to paying for the AppleCare+ subscription on his new device.

16. Apple, Inc. is a California corporation with its principal place of business located at One Apple Park Way, Cupertino, California, 95014.

17. AppleCare Service Company, Inc. is an Arizona subsidiary of Apple with its principal place of business located at One Apple Park Way, Cupertino, California 95014. AppleCare Service Company does business as Apple CSC, Inc. in the state of Texas.

18. Defendants are both named in the AppleCare+ Terms and Conditions and each have defined responsibilities that relate directly to the claims of Plaintiff and the Class he seeks to represent. At all relevant times, the AppleCare+ Terms and Condition define Apple Inc. as the Administrator of the AppleCare+ Plan, making it responsible for the collection and transfer to AppleCare Service Company, Inc. of the purchase price for the AppleCare+ Plan and for the administration of claims under the AppleCare+ Plan.

# FACTUAL ALLEGATIONS

### A. AppleCare Terms and Conditions

19. One of the services that Apple regularly sells to its customers is AppleCare+. According to Apple, "[m]ost Apple hardware comes with a one-year limited warranty and up to 90 days of complimentary technical support." Not surprisingly, Apple encourages consumers to extend their coverage further by purchasing an additional product from Apple: AppleCare+.[1]

20. AppleCare+ is subject to Terms and Conditions that Apple publishes on its website.[2] Since at least July 15, 2020, all devices for which Apple offers AppleCare+ have been covered by a single set of Terms and Conditions, updated throughout the years.[3] Apple's Terms and Conditions refer to the AppleCare+ contract as "the Plan."[4]

21. Apple's Terms and Conditions provided that the Plan applies only to "Covered Equipment," which is defined as the device "listed on your Plan Confirmation."[5]

22. Each device sold by Apple has its own unique serial number, and each purchase of AppleCare+ is tied to the device's unique serial number. Apple tracks which specific Apple devices in circulation are Covered Devices under an AppleCare+ contract by using that number.

23. The AppleCare+ contract has set a "Plan Term" for monthly subscriptions of one month that will automatically renew each month unless cancelled as set forth in the Cancellation Section. Cancelling a fixed-term or annual plan early, on the other hand, entitled consumers to a prorated refund tied to the unused time under the plan, sometimes minus certain defined fees.

---

[1] https://www.apple.com/support/products/ (last accessed Sept. 25, 2024).
[2] *See, e.g.*, AppleCare+ Terms and Conditions, located at: https://www.apple.com/legal/sales-support/applecare/applecareplus/us/ (last accessed Sept. 20, 2024).
[3] *See, e.g.,* AppleCare+ Terms and Conditions, July 15, 2020 (for Apple Watch, HomePod, iPad, iPhone, iPod and Headphones); available at: https://www.apple.com/legal/sales-support/applecare/applecareplus/071520_applecareplus_us.pdf (last accessed Sept. 25, 2024).
[4] *Id.*
[5] *See, e.g., id.*

24. Obviously, once a consumer trades in or returns a Covered Devices forward, AppleCare+ coverage and protections become worthless because the AppleCare+ is tied to the specific device that the consumer no longer possesses.

25. Beginning on April 20, 2021, through updated the Terms and Conditions regarding cancellation, Apple abandoned the prior purported requirement that consumers actually call Apple to cancel in addition to returning a Covered Device, and replaced it with a policy through which AppleCare+ would automatically end upon the return of a Covered Device.

26. Specifically, the 2021 change provided that "[r]egardless of your Plan type, to cancel this Plan with the return of your Covered Device, go to the original sales channel of your Covered Device purchase (whether a Reseller or Apple). You . . . will receive a full Plan refund."[6]

27. On September 14, 2021, Apple again updated the Terms and Conditions regarding cancellation, to add a subsection that expressly addressed trade-ins. That provision stated that "[f]or Monthly Plans, if you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program, that trade-in will be deemed an expression of your intent to cancel your Monthly Plan and it will be cancelled consistent with clause 9.1(b)(i)."[7]

28. Since the 2021 changes, the Plan has included a substantially similar terms regarding trade-ins, with the current version stating that: "For Monthly and Annual Plans, if you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program, that trade-in will be deemed an expression of your intent to cancel your Monthly or Annual Plan and it will be cancelled."[8]

---

[6] AppleCare+ Terms and Conditions, April, 20, 2021, available at: https://www.apple.com/legal/sales-support/applecare/applecareplus/0421/042021_applecareplus_us.pdf
[7] AppleCare+ Terms and Conditions, Sept. 14, 2021, available at: https://www.apple.com/legal/sales-support/applecare/applecareplus/0921/091421_applecareplus_us.pdf
[8] AppleCare+ Terms and Conditions, Sept. 9, 2024, available at: https://www.apple.com/legal/sales-support/applecare/applecareplus/2409/240909_applecareplus_us.pdf

29. Each version of the Terms and Conditions has included an express provision that any updates Apple makes that benefit the consumer take effect immediately. "If Apple adopts any revision to this Plan that would broaden your coverage without additional cost or any increase in service fees, the broadened coverage will immediately apply to this Plan."[9] Thus, the various updates to the Terms and Conditions that improved and broadened consumers' rights, including those above, therefore became effective immediately.

30. Further, at all relevant times, the Terms and Conditions have provided that:

> THE BENEFITS CONFERRED BY THIS PLAN ARE IN ADDITION TO ALL RIGHTS AND REMEDIES PROVIDED UNDER CONSUMER PROTECTION LAWS AND REGULATIONS. THIS PLAN SHALL NOT PREJUDICE THE RIGHTS GRANTED BY APPLICABLE CONSUMER LAW, INCLUDING THE RIGHT TO RECEIVE REMEDIES UNDER STATUTORY WARRANTY LAW AND TO SEEK DAMAGES IN THE EVENT OF THE NON-PERFORMANCE BY APPLE OF ANY OF ITS CONTRACTUAL OBLIGATIONS.[10]

31. At all relevant times, the Terms and Conditions have provided that the laws of the State of California govern Plans purchased in the United States unless they are inconsistent with the laws of any jurisdiction where a consumer purchased their Plan.[11]

32. Further, beginning with the April 20, 2021 revisions, the AppleCare+ Terms and Conditions contractually required Apple to cancel AppleCare+ contracts upon the completion of certain trade-ins or returns.[12] Because these updates to the AppleCare+ cancellation provision benefitted the consumer, they took effect immediately. Apple was obligated by the express terms of the contract in effect at the time of Plaintiff's trade-in, and the trade-ins or returns of members of the Class, to

---

[9] *See, e.g., id.*
[10] *See, e.g., id.*
[11] *See, e.g., id.*
[12] *Supra* n. 7.

automatically cancel the AppleCare+ contract associated with the Covered Devices consumers no longer owned.

### B. Apple Trade-In Process

33. Apple tracks trade-ins and returns of Apple devices by serial number. In fact, Apple's trade-in FAQ includes an answer to "How do I find the serial number on my Apple device?"[13] and links to a thorough support page instructing consumers how to find their serial number.[14]

34. The Terms and Conditions of the Apple Trade In Program provide that, "[a]t completion of this transaction, ownership of your device transfers to Vendor, and you assign to Apple the right to collect from Vendor the value you receive."[15]

35. Because Apple tracks all Covered Devices under an AppleCare+ plan by serial number, Apple has actual knowledge each time a Covered Device has been traded-in or returned.

36. Once a consumer trades in or returns a Covered Device, they receive no value or benefit from AppleCare+ for that device. Because AppleCare+ is an extended warranty and service plan for a specific device, it becomes worthless once a consumer no longer owns the Covered Device.

37. When Apple updated its Terms and Conditions in 2021 to provide for automatic cancellation, however, Apple failed to adopt procedures sufficient to implement the updated cancellation policy. As a result, Apple continued to charge Plaintiff and members of the Class for AppleCare+ services that it knew were worthless.

---

[13] Apple Trade In, located at https://www.apple.com/shop/trade-in (last accessed September 20, 2024).
[14] Find the Serial Number of Your Apple Product, located at https://support.apple.com/en-us/102858 (last accessed September 20, 2024).
[15] Apple Trade In Terms and Conditions, available at: https://www.apple.com/legal/sales-support/trade-in/us/ (last accessed September 20, 2024).

38.     Apple continues to charge its consumers across the country for AppleCare+ for devices that Apple knows they no longer own. Unless enjoined, there is every reason to believe that Apple will continue this practice.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) on behalf of himself and on behalf of all other persons similarly situated.

40.     Plaintiff proposes the following Class, subject to amendment as appropriate:

> **Nationwide Class:** All individuals who traded in or returned a Covered Device under an AppleCare+ Plan in the last four years whose contract was not immediately cancelled, resulting in additional charges or in the failure to provide prorated refunds.

41.     Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

42.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

43.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

44.     **Numerosity.** This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that each proposed Class contains thousands of customers who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

45.     **Commonality.** This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether AppleCare+ contracts required Defendants to cancel consumers' AppleCare+ Plans upon trade in;

- Whether consumers received any benefit, bargain, and/or consideration from AppleCare+ contracts once their Covered Devices were traded in;

- Whether Defendants breached their contracts with consumers by failing to cancel AppleCare+ Plans;

- Whether Apple knew or should have known that Covered Devices were traded in based on serial numbers;

- Whether Defendants' conduct in continuing to charge consumers for AppleCare+ Plans on devices they no longer owned was deceptive, unfair, and/or misleading;

- Whether Defendants were unjustly enriched as a result of charging their customers for AppleCare+ Plans on Covered Devices that consumers no longer owned;

- Whether Defendants breached the Implied Covenant of Good Faith and Fair Dealing by continuing to charge customers for AppleCare+ Plans on Covered Devices no longer owned by those customers;

- Whether Plaintiff and Class Members suffered damages as a result of Defendants' conduct; and

- Whether Plaintiff and the Class Members are entitled to declaratory and/or injunctive relief and the nature of that relief.

46. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above and were improperly charged for AppleCare+ on devices they no longer owned. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is

entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

47. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and the Class are all customers of Defendants and were harmed by Defendants' misconduct outlined herein. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

48. **Superiority.** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

49. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendants will be allowed to profit from their unfair and unlawful practices, while Plaintiff

and the members of the Class will have suffered, and will continue to suffer, damages. Unless a Class-wide injunction is issued, Defendants will likely continue to benefit from the violations alleged, and the members of the Class and the general public may continue being unfairly treated.

50. Defendants have acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

## COUNT ONE
## BREACH OF CONTRACT

51. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-49 as if fully set forth herein.

52. AppleCare+ Terms and Conditions constitute a contract between Defendants and consumers, including Plaintiff.

53. Beginning on April 20, 2021, the express terms of the parties' contract required Defendants to automatically cancel AppleCare+ when consumers made certain returns and trade-ins of Covered Devices.

54. When Plaintiff completed the trade-in process through Apple's official program in May 2023, the corresponding Cancellation provision stated: "For Monthly Plans, if you trade-in your Covered Equipment to Apple or an Apple Authorized Reseller as part of an Apple authorized trade-in program, that trade-in will be deemed an expression of your intent to cancel your Monthly Plan and it will be cancelled."

55. Plaintiff was on a Monthly Plan when he completed his authorized trade-in directly with Apple, but, contrary to its contractual obligations, Apple did not cancel the AppleCare+ plan on his old Covered Device but instead kept charging him monthly fees.

56. Apple's failure to automatically cancel consumers' AppleCare+ plans after trade-ins or returns, constitutes a breach of the terms of Apple's own AppleCare+ Terms and Conditions.

57. Moreover, Apple's decision to continue charging for AppleCare+ despite a total lack of consideration rather than cancel the contracts when its continued performance becomes impossible a breach of its duty of good faith and fair dealing in all circumstances.

58. Plaintiff and members of the Class have been damaged by Defendants' breach of contract. Plaintiff continued paying monthly AppleCare+ subscription fees for a phone he had officially traded in to Apple more than a year ago, and similarly situated consumers are paying fees on devices they no longer own.

59. In fact, every consumer who did not have their AppleCare+ subscription cancelled when they traded in or returned their Covered Devices was damaged. Even where Apple provided partial or full refunds, affected consumers were damaged by the lost time value of money and are entitled to recover interest.

## COUNT TWO
## UNJUST ENRICHMENT

60. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-49 as if fully set forth herein.

61. Plaintiff pleads this claim for unjust enrichment in the alternative to Count One.

62. Each time Defendants failed to cancel an AppleCare+ contract when a Covered Device had been traded in or returned, Defendants received a benefit.

63. The benefit received by Defendants came at the expense of Plaintiff and the Class, as Plaintiff and the Class continued to be charged for coverage and protection that was no longer provided.

64. It would be unfair and unjust for Defendants to retain that benefit at the expense of Plaintiff and the Class without compensation Plaintiff and the Class

65. Accordingly, Defendants should be required to return all the benefits they unjustly retained under AppleCare+ contracts following trade-ins or returns of Covered Devices to Plaintiff and members of the Class.

**COUNT THREE**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

66. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-49 as if fully set forth herein.

67. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

68. With respect to "unfair" practices, in the consumer context, courts "generally continu[e] to apply a broad[] standard . . . encompassing business practices that 'offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 886-87, 85 Cal. Rptr. 2d 301 (1999)).

69. It is unfair for Apple to continue charging for AppleCare+ coverage when Apple knows a consumer has traded in or returned a Covered Device. Once a Covered Device is returned or traded-in, consumers cannot and do not receive any benefits under an AppleCare+ contract tied to that device, and Apple knows that they will receive no consideration going forward regardless of their plans. This practice violates the "unfair" prong of the UCL regardless of whether Apple committed fraud or made any misrepresentations.

70. Apple's conduct is unlawful because it violates California's Consumer Legal Remedies Act, as set out in Count Four below.

71. Plaintiff and members of the Class all suffered financial injury, including the lost time value of money, due to Defendants' unfair and unlawful conduct in violation of the UCL.

72. Plaintiff seeks to enjoin further unlawful and unfair acts or practices by Defendants under Cal. Bus. & Prof. Code § 17203.

73. Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair and/or unlawful practices; to order Defendants to cancel the AppleCare+ contracts of all customers who have already returned or traded in the Covered Devices; to order Defendants to implement systems sufficient to automatically cancel all AppleCare+ contracts when the associated Covered Device has been traded in or returned; to restore, via restitution or disgorgement, any monies Defendants acquired by unfair competition, as provided by Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as may be just and proper.

## COUNT FOUR
## CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

74. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-49 as if fully set forth herein.

75. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

76. Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

77. Plaintiff and members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d) who purchased an AppleCare+ contract.

78. The Covered Devices under an AppleCare+ contract are "goods" as defined in Cal. Civ. Code § 1761(a).

15

CLASS ACTION COMPLAINT

79. The services that Apple is obligated to provide in connection with a Covered Device under an AppleCare+ contract are "services" as defined in Cal. Civ. Code § 1761(b).

80. Both the making of and performance under the AppleCare+ contracts are "transactions" as defined in Cal. Civ. Code § 1761(e).

81. To the extent that Apple promised automatic cancellation of AppleCare+ contracts for certain consumers, including Plaintiff, upon trade-in or return but failed to deliver on that promise, Apple "[r]epresent[ed] that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" in violation of Cal. Civ. Code § 1770(a)(14). Specifically, Apple represented that consumers had the right to automatic cancellation—or that Apple had the obligation to implement automatic cancellation—but the transactions of Plaintiff and certain members of the Class did not involve or confer those promised rights or obligations.

82. To the extent that the AppleCare+ contracts did not provide for automatic cancellation upon trade-in or return for certain devices at certain times but instead suggested that consumers had to take affirmative action to cancel AppleCare+ beyond the trade-in or return, it is unconscionable for Apple to assert a right to continue charging customers or retain pre-paid benefits under AppleCare+ contracts associated with Covered Devices that Apple knows the consumers no longer own. From that point forward, Apple knows that the AppleCare+ contract cannot provide the consumer any benefit, and Apple knows that it is guaranteed to be cost-free for the company.

83. It is unconscionable for Apple to assert a right to continue charging consumers something for nothing under these circumstances for essentially the same reasons the conduct is unfair under the UCL and breaches Apple's duty of good faith and fair dealing.

84. Plaintiff and members of the Class suffered ascertainable loss caused by Defendants' conduct, as outlined herein.

85. Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendants' unfair acts or practices under Cal. Civ. Code § 1780(a)(2). Specifically, Plaintiff asks the Court to order Apple to (1) immediately cancel all AppleCare+ contracts for Covered Devices that have already been traded in or returned and (2) adopt systems and practices sufficient to automatically cancel AppleCare+ subscriptions whenever Apple learns a Covered Device has been traded in or returned.

86. Plaintiff, on behalf of himself and the Class, seeks an award of costs and attorneys' fees under Cal. Civ. Code § 1780(e).

87. At this time, Plaintiff does not bring a claim for damages under the CLRA. Plaintiff reserves the right to amend his complaint to add damages claims under the CLRA thirty days or longer after compliance with the notice requirements of Cal. Civ. Code § 1782(a), should Defendants fail to meet Plaintiff's demands. Plaintiff sent by Certified Mail, Return Receipt Requested, a notice to comply with said requirements on September 27, 2024.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class Members;

B. Naming Plaintiff as the representative of the representative of the Class;

C. Declaring that Defendants' conduct violated the laws referenced herein;

D. Finding in favor of Plaintiff and the Class on all counts asserted herein;

E. Awarding actual, consequential, punitive, statutory and treble damages;

F. Awarding applicable prejudgment post-judgment interest on all amounts awarded;

G. For injunctive relief as pleaded or as the Court may deem proper;

     H. For disgorgement and restitution to Plaintiff and the Class all monies received or collective from Plaintiff and the Class and all forms of equitable relief;

     I. Awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit;

     J. Awarding damages in an amount to be determined at trial; and

     K. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: September 30, 2024

/s/ Kyle McLean
Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*